BRADFORD L. HIGDON, ESQ. (will comply with LR IA 11-2 within 14 days)
Colorado Bar No. 61220
FROST BROWN TODD LLP
1801 California Street, Suite 2700
Denver, Colorado 80202
Telephone: (303) 406-4990
bhigdon@fbtlaw.com

MICHELLE D. ALARIE, ESQ.
Nevada Bar No. 11894
ALARIE LAW
4484 S. Pecos Road, Suite 173
Las Vegas, Nevada 89121
Telephone: (702) 208-8013
Facsimile: (702) 620-4603
malarie@alarielaw.com

*Attorneys for Plaintiffs Wodify Technologies, LLC and Ameet Shah*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WODIFY TECHNOLOGIES, LLC, a Delaware limited liability company; and AMEET SHAH, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>TAHOE BEACH CLUB, LLC (D/B/A TAHOE BEACH CLUB), a Nevada limited liability company;<br><br>Defendant. | Case No.: 3:25-cv-522<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs, Wodify Technologies, LLC and Ameet Shah, by and through their counsel, Michelle Alarie, Esq. of Alarie Law and Bradford L. Higdon, Esq. of Frost Brown Todd LLP (LR 11-2 petition forthcoming), bring this Complaint against Defendant Tahoe Beach Club, LLC d/b/a Tahoe Beach Club, and states and alleges as follows:

**PARTIES**

1. Plaintiff Wodify Technologies, LLC ("Wodify Technologies") is a New Jersey limited liability company with a principal place of business located at 1615 Platt Street, 2nd Floor, Denver, CO 80202.

2. Plaintiff Ameet Shah ("Mr. Shah") is an individual residing at 470 Quaking Aspen Lane, Unit B, Stateline, NV 89449.

3. Mr. Shah is the principal and Chairman of the Board of Directors for Wodify Technologies.

4. Upon information and belief, Defendant Tahoe Beach Club, LLC (d/b/a Tahoe Beach Club) ("TBC") is a Nevada limited liability company with a principal place of business located at 1 Beach Club Dr, Stateline, NV 89449.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that district courts have original jurisdiction of all civil actions arising under the laws of the United States, including claims under 42 U.S.C. § 1981. This Court may exercise supplemental jurisdiction over state law claims asserted herein pursuant to 28 U.S.C. § 1367, as Plaintiffs' additional claims related to and share a common nucleus of operative fact with the federal claim.

6. This Court has personal jurisdiction over the Defendant because, among other reasons, the Defendant resides in Nevada, the Defendant transacts business in Nevada, the Defendant contracted to supply goods or services in Nevada, and the parties agreed that "the state court or federal district court having jurisdiction over Douglas County, Nevada" shall be the designated venue for any disputes arising out of the parties' agreement.

7. Venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b)(1) and (2), because, upon information and belief, Defendant resides in Nevada, and a substantial part of the events giving rise to the claims for relief occurred in the District of Nevada. In addition, the forum selection clause in the parties' agreement governing this dispute identifies the District of Nevada as the designated venue for any disputes arising out of the parties agreement.

## FACTUAL ALLEGATIONS

8. Wodify Technologies operates an all-in-one management software to help gym and studio owners manage their business, optimize their revenue, and increase membership.

9. TBC operates a "luxury" private residential and resort community and club located on the eastern shore of Lake Tahoe in Douglas County, Nevada (the "Club").

10. The Club offers resident, non-resident, corporate, and seasonal membership options.

11. Membership to the Club includes access to a "fine dining" restaurant, a clothing and recreational equipment store, a pool, an indoor and outdoor spa, a fitness center, and a general store.

12. On or around December 10, 2024, Wodify Technologies purchased a corporate membership to the Club by entering into a Membership Agreement for Corporate Designee with TBC (collectively, with all documents incorporated and referenced therein, the "Membership Agreement," attached as **Exhibit 1**).

13. Wodify Technologies purchased a corporate membership so that Mr. Shah and other Wodify Technologies personnel, along with their guests, could use the Club's luxury facilities and participate in its community.

14. The Club's Amended and Restated Membership Plan ("Membership Plan," attached as **Exhibit 2**), which is expressly incorporated into the Membership Agreement, states that "[t]he Membership Plan, Customs and Courtesies and Member Agreement set forth the rights, privileges and obligations of Members and membership in the Club." *See* Ex. 2, § 1, Introduction.

15. As part of its membership, Wodify Technologies paid an initiation fee in the amount of $45,884.00.

16. Wodify Technologies also paid membership dues and other fees during the course of its membership with TBC including but not limited to paying to TBC a lump sum payment totaling $13,200.00 for its 2025 membership.

**The Club's Poor Management and Continued Service Issues**

17. After joining the Club, Wodify Technologies and Mr. Shah (collectively, "Plaintiffs") observed and experienced numerous operational and service deficiencies that fell well short of the "luxury" standards advertised by the Club.

18. These Club deficiencies included, among other things, irregular restaurant hours, poor dining service, unfinished facilities and infrastructure such as unpaved entry roads and other construction-related hazards, lax security allowing unvetted individuals onto the Club's property, cancellations of meetings without advance notice or any apology, and unreliable member services such as shuttle transportation.

19. Upon information and belief, similar concerns have been raised by other members and even appear in online public reviews of the Club.

20. On May 21, 2025, Wodify Technologies sent a formal letter to TBC raising its complaints with respect to the Club and its amenities.

21. Wodify Technologies' complaints went mostly ignored by TBC.

**The Club's Blatant Discrimination**

22. From April 1, 2025 to April 3, 2025, Wodify Technologies hosted a training session for its customers to demonstrate Wodify Technologies' software and services related to fitness and spa operations as well as best practices for operating an efficient and profitable business.

23. The training took place on the Club's premises.

24. As a courtesy, Wodify Technologies invited certain Club employees to attend the training, and several Club employees, including Courtney Larson, the Club's Director of Spa and Fitness, did in fact attend the training.

25. On the evening of April 3, 2025, Mr. Shah and a group of Wodify Technologies employees and customers, along with some Club staff, gathered informally at the Club's lounge and restaurant area.

26. During this gathering, Ms. Larson approached Mr. Shah and repeatedly pressured Mr. Shah to give her feedback about the Club's spa. Ms. Larson did so despite Mr. Shah having requested earlier in the evening that the group refrain from discussing business matters to allow everyone to relax and enjoy the evening. Eventually, however, Mr. Shah indulged Ms. Larson's repeated requests providing Ms. Larson with his honest feedback and constructive criticism regarding the Club's facilities.

27. Despite soliciting feedback, Ms. Larson was not willing to engage in a productive dialogue. Instead, Ms. Larson became extremely dismissive, disrespectful, and hostile towards Mr. Shah.

28. Upon information and belief, Ms. Larson had consumed alcoholic beverages prior to the time of this conversation.

4

29. A Club member who was at the social gathering then became involved in the conversation between Ms. Larson and Mr. Shah by directing an offensive racist slur toward Mr. Shah, calling Mr. Shah the n-word (the "Incident").

30. Mr. Shah is a person of South Asian (Indian) descent and, at the time the slur was made, was the only person of color in the area.

31. To make matters worse, at the time the racist slur was uttered, the Club staff present that heard and/or witnessed the offensive racist slur, including Ms. Larson, did not confront or correct the Club member who made the offensive racist slur nor inquire if Mr. Shah was okay.

32. As soon as the racist slur was uttered, Mr. Shah felt humiliated, unsafe, and unwelcome in the Club. The lack of any objection from Club staff, including Ms. Larson, was extremely distressing to Mr. Shah.

33. Shortly thereafter, Mr. Shah left the gathering in a state of complete and utter distress.

34. In the night and days following the Incident, Mr. Shah suffered anxiety, insomnia, loss of appetite, and a deep sense of betrayal by the Club staff and community.

35. Upon information and belief, the Club staff that heard and/or witnessed the offensive racist slur directed at Mr. Shah, including Ms. Larson, did not report the Incident to TBC's management.

36. On or about April 10, 2025, because of TBC's ongoing pattern of unprofessional conduct, poor service, refusal to address any of Plaintiffs' concerns, and total inaction following a racist slur directed at Mr. Shah while on Club property, Wodify Technologies requested a refund of all initiation fees and dues paid to TBC to date.

37. On or about April 12, 2025, TBC responded by issuing a written Conduct Notice to Wodify Technologies and Mr. Shah, alleging that Mr. Shah had engaged in "improper conduct" and suspending Plaintiffs' membership and access to the Club.

38. Shockingly, the Conduct Notice accused Mr. Shah of using "racially charged language," acting in a hostile or condescending manner toward Club staff, shouting and swearing, and issuing an "ultimatum" to Club staff.

39. TBC's claims are patently false.

40. Although Mr. Shah admittedly became frustrated with TBC and its failure to address administrative and systemic issues, Mr. Shah never engaged in harassing, hostile, or threatening conduct, nor did he ever use any racially charged language. Furthermore, Mr. Shah's comment that TBC staff had "30 days to get their act together" was not, and under the circumstances in which it was said, could not reasonably be characterized as an "ultimatum."

41. TBC's immediate suspension of Plaintiffs' membership and access to the Club was also in clear violation of the Membership Agreement.

42. Specifically, the Club's Customs and Courtesies (attached hereto as **Exhibit 3)**, which govern the use of the Club's facilities and all other matters pertaining to membership with TBC, required the Club to provide advance notice to any member accused of improper conduct, along with the Club's proposed disciplinary action. *See* Ex. 3, at 7. The Customs and Courtesies further provide that prior to any disciplinary action, the member must be permitted to "show cause" as to why the proposed action should not be taken. *Id.* And finally, within 10 days of any member's request to be heard, the Club must schedule a hearing. *Id.*

43. Plaintiffs issued a written response to TBC on or about May 22, 2025, contesting TBC's baseless accusations, requesting a formal investigation into the alleged incidents, and notifying TBC that it had failed to comply with the contractually obligated protocols for immediate suspension.

44. The Conduct Notice and the suspension of Plaintiffs' membership and access were a clear retaliation by TBC for the complaints Plaintiffs had made against TBC including the Club's encouragement of and failure to address the racist slur directed at Mr. Shah while on Club property.

45. Upon information and belief, the Club member that uttered the racist slur against Mr. Shah was never disciplined, nor was his membership or access to the Club ever suspended or terminated.

46. Upon information and belief, TBC never took steps to retrain Club staff or implement new policies following the Incident and the Club staff's inaction.

47. TBC also did not offer any support to Mr. Shah following the Incident.

48. The Customs and Courtesies provide: "The Club shall not discriminate against any individual because of the individual's race, color, religion, sex, gender identity, ancestry, familial

6

status, age, disability, sexual orientation, HIV infection, handicap, or marital status, as recognized by the State of Nevada." Ex. 3 at 4.

49. The Customs and Courtesies provide that the Club "shall be the sole judge of what constitutes improper conduct" worthy of disciplinary action, but the following conduct is expressly included under the definition of improper conduct:

    a) Violent or threatening behavior or behavior otherwise endangering the health, safety, or well-being of any person or property;

    b) Abusing the Club personnel or employees, other members or anyone else on the Club premises; and

    c) Acting in a manner incompatible with the standard of conduct of the existing membership or conduct which is generally unbecoming of a member, whether or not at the Club or related to the Club.

*Id.* at 7.

50. In entering into the Membership Agreement with TBC, Wodify Technologies reasonably relied on TBC's representations that TBC does not discriminate on the basis of race, color, or ancestry, and that it would discipline members who engaged in such improper conduct.

51. Following the Incident and Mr. Shah's formal complaint to Club management, it became clear that, not only did the Club condone racist behavior, but they encouraged it by failing to discipline the offending member and failing to rectify the situation with Mr. Shah. But worse, TBC responded by suspending Wodify Technologies' membership and precluding Plaintiffs' from accessing the Club, instead of holding the offending Club member accountable.

52. TBC's conduct has deprived Plaintiffs of their right to make and enforce contracts regardless of Mr. Shah's race, because TBC encouraged, condoned, sanctioned, and perpetuated racist conduct directed against Mr. Shah that resulted in the suspension and preclusion of Plaintiffs' right to enjoy the Club's benefits and privileges.

53. To date, TBC has still not restored Plaintiffs' membership or access or issued a refund for any amounts paid by Wodify Technologies.

54. Mr. Shah has also suffered severe reputational harm as a result of TBC's conduct.

7

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Wodify Technologies Against TBC)**

55. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

56. TBC and Wodify Technologies entered into the Membership Agreement, which is a valid and binding contract.

57. Wodify Technologies has paid all required dues and fees, complied with all Club policies, and otherwise fully performed its obligations under the Membership Agreement.

58. To the extent Wodify Technologies has not fully performed its obligations under the Membership Agreement, its performance is excused by TBC's breaches.

59. TBC breached the Membership Agreement by discriminating against Wodify Technologies' principal, Mr. Shah, on the basis of race, color, and ancestry, failing to discipline another Club member who directed a racial epithet at Mr. Shah, and suspending Wodify Technologies' membership and benefits without cause and in violation of the Membership Agreement's disciplinary procedures.

60. The Membership Agreement states that the "prevailing party in any litigation . . . shall be awarded attorneys' fees and costs." Ex. 1 at 5.

61. As a direct and proximate result of TBC's breaches, Wodify Technologies has suffered damages in an amount to be determined at trial.

62. Wodify Technologies has had to retain the services of an attorney to protect its rights and prosecute this action. Therefore, Wodify Technologies' is entitled to recover attorneys' fees and costs against TBC.

**SECOND CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Wodify Technologies Against TBC)**

63. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

64. Under Nevada law, the Membership Agreement imposed an implied covenant of good faith and fair dealing upon TBC.

65. Wodify Technologies has paid all required dues and fees, complied with all Club policies, and otherwise fully performed its obligations under the Membership Agreement, except those obligations in which performance has been excused.

66. TBC breached the implied covenant of good faith and fair dealing by performing in a manner that is unfaithful to the contract's purpose and/or by deliberately contravening the intention and spirit of the Membership Agreement.

67. Specifically, TBC breached the implied covenant of good faith and fair dealing by temporarily suspending Wodify Technologies' membership without cause and in violation of the Membership Agreement's disciplinary procedures, discriminating against Wodify Technologies' principal, Mr. Shah, on the basis of race, color, and ancestry, failing to discipline another Club member who directed a racial epithet at Mr. Shah, and suspending Wodify Technologies' membership and benefits following the racist incident.

68. Wodify Technologies reasonably and justifiably expected that it would be able to fully enjoy the Club's amenities, facilities, and benefits so long as Plaintiffs complied with their obligations under the Membership Agreement, which they did, and that any Club members who violated the Club's policies would have their membership terminated in accordance with the established disciplinary procedures.

69. TBC's breach of the implied covenant of good faith and fair dealing denied Wodify Technologies of its reasonable and justified expectations under the Membership Agreement.

70. As a direct and proximate result of TBC's breach of the implied covenant of good faith and fair dealing, Wodify Technologies has been damaged in an amount to be determined at trial.

71. Wodify Technologies has had to retain the services of an attorney to protect its rights and prosecute this action. Therefore, Wodify Technologies' is entitled to recover attorneys' fees and costs against TBC.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(Wodify Technologies Against TBC)**

72. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

73. Wodify Technologies conferred a benefit on TBC by paying TBC substantial amounts for membership fees, dues, and other payments.

74. TBC accepted, appreciated, and retained these benefits.

75. Under the circumstances described in the preceding paragraphs, TBC's retention of such benefits without conferring any reciprocal value on Wodify Technologies would be inequitable and result in TBC being unjustly enriched.

76. As a direct and proximate result of TBC's unjust enrichment, Wodify Technologies has been damaged in an amount to be determined at trial.

77. Wodify Technologies has had to retain the services of an attorney to protect its rights and prosecute this action. Therefore, Wodify Technologies' is entitled to recover attorneys' fees and costs against TBC.

### FOURTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**(Mr. Shah Against TBC)**

78. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

79. TBC's failure to timely address, rectify, or take action against the Club member that made a racist slur against Mr. Shah, followed by TBC's suspension of Wodify Technologies' Club membership for pretextual reasons, was both extreme and outrageous conduct.

80. Indeed, TBC's conduct was publicly humiliating for Mr. Shah, and caused Mr. Shah to suffer humiliation, extreme distress, anxiety, insomnia, loss of appetite, and a deep sense of betrayal by the Club community and staff.

81. TBC's conduct was done with the intention of, or reckless disregard for, causing emotional distress to Mr. Shah.

10

82. As a direct and proximate result of TBC's conduct, Mr. Shah suffered severe and extreme emotional distress in an amount to be determined at trial.

83. TBC's conduct, as described in the preceding paragraphs, was oppressive, malicious, and/or in conscious or reckless disregard of the consequences to Mr. Shah, thereby subjecting TBC to punitive damages as set forth in NRS 42.005.

84. Mr. Shah has had to retain the services of an attorney to protect his rights and prosecute this action. Therefore, Mr. Shah is entitled to recover attorneys' fees and costs against TBC.

**FIFTH CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1981 – Equal Rights to Make and Enforce Contracts**
**(All Plaintiffs Against TBC)**

85. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

86. As a person of South Asian (Indian) descent, Mr. Shah is a member of a racial minority.

87. Mr. Shah is the principal of Wodify Technologies.

88. TBC intentionally discriminated against Plaintiffs on the basis of Mr. Shah's race when it failed to report or take any disciplinary action against a Club member who directed a racial epithet at Mr. Shah (despite their obligation to do so under the parties' Agreement), ignored Mr. Shah's written complaints regarding the Incident, and in response, suspended Wodify Technologies' membership.

89. But for TBC's discrimination against Plaintiffs on the basis of race, Plaintiffs would not have been deprived of the right to enjoy all the benefits, privileges, terms, and conditions under the Membership Agreement.

90. TBC's discrimination against Plaintiffs resulted in Mr. Shah suffering severe mental anguish and distress.

91. TBC's discrimination against Plaintiffs was intentional and made with reckless and callous disregard for Plaintiffs' rights.

92. Federal law provides that, in any action or proceeding to enforce a provision of 42 U.S.C. § 1981, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost[.]" 42 U.S.C. § 1988(b).

11

93. As a direct and proximate result of TBC's violation of 42 U.S.C. § 1981, Plaintiffs have been damaged in an amount to be determined at trial, but which includes Plaintiffs' attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
### Violation of the Nevada Deceptive Trade Practices Act, NRS § 598.0901, *et seq.*
### (All Plaintiffs Against TBC)

94. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

95. NRS 41.600 creates a private cause of action for a victim of deceptive trade practices and provides for an award of attorneys' fees upon a finding that a violation occurred.

96. As set forth in the preceding paragraphs, TBC committed a deceptive trade practice in violation of NRS 598.0923(1)(e) by engaging in an unconscionable practice in a transaction by knowingly, arbitrarily, and unfairly excluding Plaintiffs' access to the Club.

97. This deceptive trade practice occurred in the course of TBC's business.

98. As a direct and proximate result of TBC's deceptive trade practice, Plaintiffs suffered actual damages in an amount to be determined at trial.

99. TBC's conduct, as described in the preceding paragraphs, was oppressive, malicious, and/or in conscious or reckless disregard of the consequences Plaintiffs, thereby subjecting TBC to punitive damages as set forth in NRS 42.005.

100. Plaintiffs have had to retain the services of an attorney to protect their rights and prosecute this action. Therefore, Plaintiffs are entitled to recover attorneys' fees and costs against TBC.

### JURY TRIAL DEMAND

101. Mr. DeFranco hereby demands a jury trial on all issue so triable.

### PRAYER FOR RELIEF

Plaintiffs respectfully requests that the Court enter judgment in favor of Plaintiffs and against Defendant Tahoe Beach Club, LLC as follows:

(a) Enter judgment in favor of Plaintiffs and against Defendant on all Causes of Action;

(b) Award Plaintiffs actual, general, and compensatory damages in an amount to be determined at trial;

(c) Award Plaintiffs punitive damages in an amount to be determined at trial;

(d) Award Plaintiffs statutory damages as permitted;

(e) Award Plaintiffs their reasonable attorneys' fees, expenses, and court costs incurred in bringing this action;

(f) Award pre- and post-judgment interest at the maximum rate permitted by law; and

(g) Any and all other relief which the Court deems just and proper.

Dated:  September 24, 2025　　　　　　　ALARIE LAW

By:   */s/ Michelle D. Alarie*
　　Michelle D. Alarie, Esq.
　　Nevada Bar No. 11894
　　4484 S. Pecos Road, Suite 173
　　Las Vegas, Nevada 89121

　　Bradford L. Higdon, Esq.
　　(LR IA 11-2 petition forthcoming)
　　FROST BROWN TODD LLP
　　1801 California Street, Suite 2700
　　Denver, Colorado 80202

*Attorneys for Plaintiffs Wodify Technologies, LLC and Ameet Shah*

## INDEX OF EXHIBITS

| **Exhibit No.** | **Exhibit Name** | **Pages** |
|---|---|---|
| 1 | Tahoe Beach Club & Wodify Technologies, LLC, Membership Agreement for Corporate Designee dated 12/10/2024 (Redacted) | 1-9 |
| 2 | Tahoe Beach Club, Amended and Restated Membership Plan | 10 - 31 |
| 3 | Tahoe Beach Club, Customs and Courtesies | 32 - 52 |